***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Garner and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence. The Full Commission affirms in part and reverses in part the Deputy Commissioner's Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Commission, and the Commission has jurisdiction of the parties and the subject matter of this action.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. On or about September 24, 1998, defendant-employer employed more than three employees, and it and its employees were bound by and subject to the provisions of the North Carolina Workers' Compensation Act.
4. On or about September 24, 1998, there existed between plaintiff and Pitt County Memorial Hospital an employee-employer relationship.
5. On or about September 24, 1998, Pitt County Memorial Hospital, a self-insured employer, provided workers' compensation insurance to its employees.
6. On or about September 24, 1998, plaintiff was employed by defendant-employer at an average weekly wage of $1,014.23.
7. On September 24, 1998, plaintiff sustained an injury by accident arising out of and in the scope of her employment with defendant-employer. This accident resulted in a knee injury.
8. Plaintiff was paid temporary total disability benefits at a weekly rate of $532.00 from June 3, 1999, through July 19, 1999, when she returned to work for defendant-employer.
9. The parties further stipulated into evidence Industrial Commission forms and medical records from Dr. Tally Lassiter, Dr. Helen Harmon, Dr. Marian Swinker, and Pitt County Memorial Hospital, marked and received as Stipulated Exhibits 1, 2 and 3.
 ***********
Based upon all of the competent evidence from the record herein, the Full Commission finds as follows:
 FINDINGS OF FACTS
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 44 years old and had been employed by defendant-employer as a nurse manager for over 12 years.
2. Plaintiff has a well-documented prior history of degenerative joint disease and severe osteoarthritis dating back to 1995. Plaintiff treated with Dr. Helen Harmon, rheumatologist, for bilateral knee pain and ankle pain from 1995 to 1999. In January 1998, plaintiff was given a steroid injection in the right knee. Dr. Harmon recommended that plaintiff have an injection in her left knee as well, but plaintiff declined.
3. On September 24, 1998, plaintiff was doing rounds and checking on care partners' duties when she was unexpectedly grabbed and hugged by a care partner. They both fell toward plaintiff's left side but did not actually fall onto the floor. Plaintiff felt immediate pain in her left knee and was unable to walk for a few minutes.
4. On October 9, 1998, plaintiff presented to Dr. Marian Swinker who diagnosed a sprain of the left knee. Dr. Swinker examined both knees in order to determine plaintiff's baseline condition. Examination of the right knee showed a full range of motion and crepitus. Dr. Swinker observed no overt effusion in plaintiff's left knee and recorded that it had a five percent limitation of extension, leading Dr. Swinker to conclude that there was some amount of fluid around the knee, which supported her diagnostic impression that plaintiff was suffering from a sprain to her left knee.
5. On November 5, 1998, plaintiff presented to Dr. Swinker for follow-up. Dr. Swinker noted crepitus and full range of motion bilaterally. Based on the x-ray and physical findings, Dr. Swinker concluded that plaintiff did not have the clinical signs of a meniscal tear.
6. An MRI was performed on November 18, 1998 that revealed moderate to severe osteoarthritis in the left knee. Although the predominant finding was osteoarthritis, the MRI also raised the possibility of small degenerative tears in the medial meniscus.
7. Dr. Swinker referred plaintiff to orthopedist Dr. Tally Lassiter. On June 3, 1999, Dr. Lassiter performed arthroscopic surgery on plaintiff's left knee. During the surgery, Dr. Lassiter found arthritis and cartilage damage and smoothed up the surfaces of the knee. There was a small meniscal tear, which Dr. Lassiter characterized as degenerative and which he repaired. In his deposition, Dr. Lassiter explained that "a degenerative tear can be an acute tear but degenerative refers more to the quality of the meniscus and the type of tear. One who is older and heavy and has arthritis can have an acute tear that is degenerative. . . ." Dr. Lassiter stated and the Commission finds that the meniscal tear was causally related to the compensable injury by accident.
8. Plaintiff did not lose any time from work until she was taken out of work to have surgery on June 3, 1999. Defendant voluntarily paid for plaintiff's arthroscopic surgery and other medical treatment and paid temporary total disability compensation to plaintiff from June 3, 1999 until she returned to work for defendant-employer on July 19, 1999. Defendant filed no form agreement for payment of compensation in this case.
9. Plaintiff filed a Form 33 Request for Hearing in this matter on February 15, 2001, after defendant refused to authorize further medical treatment for bilateral knee and ankle pain. Defendant did not contest the compensability of plaintiff's left knee condition and resulting arthroscopic surgery until after the taking of the depositions of the medical experts.
10. In September 1999, Dr. Lassiter discussed with plaintiff the possibility of a future total knee replacement. The possibility that plaintiff will need a total knee replacement in the future depends on her pain and is causally related only to her progressively worsening osteoarthritis.
11. On November 2, 1999, Dr. Lassiter found that plaintiff had reached maximum medical improvement from her work-related injury and arthroscopic surgery. As a result of the injury by accident and resulting surgery, plaintiff retains a 10% permanent functional impairment to her left knee.
11. As a result of her work-related injury on September 24, 1998, plaintiff sustained a temporary aggravation of her left knee condition but the underlying osteoarthritis was not affected. When plaintiff reached maximum medical improvement on November 2, 1999, the temporary aggravation had resolved and her knee returned to its baseline condition.
12. Plaintiff's current left knee condition is due solely to her problems with advanced osteoarthritis and is unrelated to her compensable injury of September 24, 1998.
13. Any problems that plaintiff may have experienced or may experience in the future with her right knee and ankles are due solely to plaintiff's advanced osteoarthritis and are unrelated to her compensable injury of September 24, 1998.
14. Plaintiff returned to work for defendant-employer on July 19, 1999 at the same or greater average weekly wage as she was earning on September 24, 1998, and at the time of the hearing before the Deputy Commissioner plaintiff continued to work as a nurse manager for employer. She has permanent work restrictions of no prolonged standing and avoiding direct patient care. These restrictions are due to her severe osteoarthritis and not a result of her compensable injury of September 24, 1998.
15. The greater weight of the medical evidence establishes and the Commission finds that plaintiff's current left knee condition and any resulting disability are not causally related to her compensable work-related injury.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On September 24, 1998 plaintiff sustained a compensable injury by accident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. As the result of the compensable injury by accident, plaintiff was temporarily totally disabled and entitled to receive compensation at the rate of $532.00 per week from June 3, 1999 through July 19, 1999. N.C. Gen. Stat. § 97-29.
3. As a direct and proximate result of the compensable injury by accident, plaintiff sustained a 10% permanent partial disability to her left leg for which she is entitled to receive compensation for 20 weeks at the rate of $532.00 per week. N.C. Gen. Stat. § 97-31(15).
4. Plaintiff is entitled to have defendant pay for medical treatment that was reasonably necessary to effect a cure, give relief or lessen the period of her disability due to her compensable injury by accident. N.C. Gen. Stat. § 97-25. Defendant is not responsible for payment of medical treatment for plaintiff's left knee after she reached maximum medical improvement from the surgery on November 2, 1999.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay plaintiff temporary total disability compensation at the weekly rate of $532.00 from June 3, 1999 through July 19, 1999. This amount has already been paid by defendant.
2. Defendant shall pay plaintiff for her permanent partial disability to her left leg compensation at the rate of $532.00 per week for 20 weeks. This amount has accrued and shall be paid in a lump sum, subject to the attorney's fee approved below.
3. Defendant shall pay for all related medical expenses that were reasonably necessary to effect a cure, give relief or lessen the period of plaintiff's disability. This obligation to pay for plaintiff's medical treatment ends November 2, 1999, after which the condition of her left knee was not related to the compensable injury by accident.
4. Plaintiff's claim for additional benefits relating to her left knee condition must be, and is hereby, DENIED.
5. Plaintiff's claim for benefits relating to her right knee and ankle condition must be, and is hereby, DENIED.
6. Defendant shall pay the costs due the Commission.
This the ___ day of October 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________ RENE C. RIGGSBEE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER